## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | |
| FTX RECOVERY TRUST, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 24-50198 (KBO) |
| NAWAAZ MOHAMMAD MEERUN, | |
| Defendant. | |

## REPLY IN FURTHER SUPPORT OF DEFENDANT MOHAMMAD NAWAAZ MEERUN'S[2] MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS, OR, IN THE ALTERNATIVE, MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

MORRIS JAMES LLP
Tara C. Pakrouh (DE Bar No. 6192)
Cortlan S. Hitch (DE Bar No. 6720)
Siena B. Cerra (DE Bar No. 7290)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
E-mail: tpakrouh@morrisjames.com
     chitch@morrisjames.com
     secerra@morrisjames.com

MORRISON COHEN LLP
Jason P. Gottlieb (*pro hac vice*)
Heath D. Rosenblat (*pro hac vice*)
Michael Mix (*pro hac vice*)
Rachel Fleder (*pro hac vice*)
909 Third Avenue, 27th Floor
New York, NY 10022-4784
Telephone: (212) 735-8600
E-mail: jgottlieb@morrisoncohen.com
     hrosenblat@morrisoncohen.com
     mmix@morrisoncohen.com
     rfleder@morrisoncohen.com

*Counsel for Defendant Mohammad Nawaaz Meerun*

Dated: May 9, 2025
Wilmington, Delaware

---

[1]   The last four digits of the prior-named plaintiffs' (*see* n.3, *infra*), FTX Trading Ltd.'s and Alameda Research LLC's, tax identification number, are 3288 and 4063 respectively.

[2]   Defendant's name is incorrectly pleaded as Nawaaz Mohammad Meerun. His actual legal full name is Mohammad Nawaaz Meerun. This Reply (defined below) uses his correct name.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.     Plaintiffs Fail to Rebut That the Court Should Compel Arbitration of the Common Law Claims and Stay Litigation of the Bankruptcy Law Claims ....................................................... 2

        A.    This Dispute Is Governed by Enforceable Arbitration Agreements ............................ 2

        B.    The Arbitration Provisions Are Enforceable by This Court ........................................ 5

        C.    The Bankruptcy Law Claims Should Be Stayed Pending Arbitration of the Common Law Claims ........................................................................................................... 7

    II.    Alternatively, Plaintiffs Fail to Rebut That the Court Should Dismiss the Complaint for Failure to State a Claim ....................................................................................................... 8

        A.    Plaintiffs Fail to Sufficiently Allege Fraud ............................................................... 9

        B.    Plaintiffs Fail to Sufficiently Allege Breach of Contract .......................................... 12

        C.    The Unjust Enrichment Claim Is Duplicative .......................................................... 13

        D.    The Bankruptcy Law Claims Should Be Dismissed Because Section 547 of the Bankruptcy Code Does Not Apply Extraterritorially .......................................................... 14

CONCLUSION ...................................................................................................................... 15

17325763/1

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*360 Campaign Consulting, LLC v. Diversity Commc'n, LLC*,
    2020 WL 1320909 (Del. Ch. Mar. 20, 2020)...........................................................................5

*In re Ampal-Am. Israel Corp.*,
    562 B.R. 601 (Bankr. S.D.N.Y. 2017) ...................................................................................14

*In re APF Co.*,
    264 B.R. 344 (Bankr. D. Del. 2001) ........................................................................................7

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
    584 F.3d 513 (3d Cir.2009)......................................................................................................2

*In re FAH Liquidating Corp.*,
    572 B.R. 117 (Bankr. D. Del. 2017) ......................................................................................14

*Feeley v. NHAOCG, LLC*,
    62 A.3d 649 (Del. Ch. 2012)....................................................................................................5

*In re Gercke*,
    122 B.R. 621 (Bankr. D.D.C.1991) ..........................................................................................7

*Hays & Co. v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir.1989).....................................................................................................5

*In re HH Liquidation, LLC*,
    590 B.R. 211 (Bankr. D. Del. 2018) ......................................................................................13

*Hickey v. Univ. of Pittsburgh*,
    81 F.4th 301 (3d Cir. 2023) ...................................................................................................13

*Jayson Co. v. Vertical Mkt. Software*,
    2006 WL 1374039 (D.N.J. May 18, 2006) ...............................................................................3

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
    560 F.3d 156 (3d Cir. 2009)......................................................................................................3

*Lepera v. ITT Corp.*,
    1997 WL 535165 (E.D. Pa. Aug. 12, 1997) .............................................................................8

*In re Maxus Energy Corp.*,
    641 B.R. 467 (Bankr. D. Del. 2022) ......................................................................................14

*In re Maxwell Commc'n Corp. plc*,
    186 B.R. 807, 819 (S.D.N.Y. 1995)..........................................................14

*In re Mintze*,
    434 F.3d 222 (3d Cir. 2006)..............................................................5, 6

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*,
    473 U.S. 614 (1985)..........................................................................2

*In re Nu Ride Inc.*,
    2024 WL 4376130 (Bankr. D. Del. Oct. 1, 2024) ..........................4, 5, 7

*Olympus Am., Inc. v. Cintas Corp. No. 2*,
    2021 WL 1248523 (D.N.J. Apr. 5, 2021) ...........................................3

*In re Olympus Healthcare Grp., Inc.*,
    352 B.R. 603 (Bankr. D. Del. 2006)....................................................5

*In re Paragon Offshore PLC*,
    588 B.R. 735 (Bankr. D. Del. 2018) ...................................................7

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
    817 A.2d 149 (Del. 2002) .................................................................5

*In re Pursuit Cap. Mgmt., LLC*,
    595 B.R. 631 (Bankr. D. Del. 2018) ...............................................5, 7

*In re Sherwood Invs. Overseas Ltd., Inc.*,
    2016 WL 5719450 (M.D. Fla. Sept. 30, 2016)....................................14

*Stanley v. A Better Way Wholesale Autos, Inc.*,
    2018 WL 3872156 (D. Conn. Aug. 15, 2018) ......................................4

*Stein v. Wind Energy Holdings, Inc.*,
    2022 WL 17590862 (Del. Super. Ct. Dec. 13, 2022) ...........................13

*In re Thorpe Insulation Co.*,
    671 F.3d 1011 (9th Cir. 2012) ...........................................................6

*In re U.S. Lines, Inc.*,
    197 F.3d 631 (2d Cir. 1999)..............................................................6

*In re White Mountain Mining Co.*,
    L.L.C., 403 F.3d 164 (4th Cir. 2005)..................................................6

*In re Winstar Commc'ns, Inc.*,
    335 B.R. 556 (Bankr. D. Del. 2005) ...................................................7

*In re: Yellow Corp.*,
  2024 WL 1313308 (Bankr. D. Del. Mar. 27, 2024)..............................................................5, 7

*In re Zetta Jet USA, Inc.*,
  2024 WL 3198826 (C.D. Cal. Mar. 26, 2024) ..................................................................14, 15

*In re Zetta Jet USA, Inc.*,
  624 B.R. 461 (Bankr. C.D. Cal. 2020)....................................................................................14

## STATUTES & RULES

11 U.S.C. § 524 ...................................................................................................................................6

11 U.S.C. § 541 .................................................................................................................................14

11 U.S.C. § 547 ..........................................................................................................................2, 14, 15

11 U.S.C. § 548 .........................................................................................................................14, 15

Fed. R. Civ. P. 8 ...............................................................................................................................13

17325763/1

Defendant Mohammad Nawaaz Meerun ("**Meerun**"), through undersigned counsel, submits this reply ("**Reply**") to *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings or to Dismiss the Complaint for Failure to State a Claim* (A.P.D.I. 36) ("**Opposition**")[3] and in further support of *Defendant Mohammad Nawaaz Meerun's Motion to Compel Arbitration and Stay Proceedings, or, in the Alternative, Motion to Dismiss the Complaint for Failure to State a Claim* and accompanying memorandum of law (A.P.D.I 11 &12) (collectively, "**Motion**"). Meerun respectfully replies as follows:

## PRELIMINARY STATEMENT[4]

Plaintiffs are obliged to arbitrate. Plaintiffs rely on the FTX Terms of Service to support their Common Law Claims, yet hypocritically seek to avoid enforcement of the arbitration provisions in the same legally binding agreements. Plaintiffs cannot have it both ways. There is no compelling justification for evading the FTX Terms of Service.

Plaintiffs' argument regarding the supposed inefficiency of having to arbitrate their Common Law Claims or the lack of clarity of the FTX Terms of Service rings hollow. It was FTX—without any input from or negotiation with users (*e.g.*, Meerun)—that drafted and imposed these Terms of Service as a prerequisite to utilize the FTX platform. And because FTX was the sole drafter, any ambiguity should be construed in Meerun's favor. Moreover, Plaintiffs cannot credibly argue delay when they sat on their supposed claims against Meerun until November 2024, even though the Complaint indicates they had knowledge of all their allegations since 2022.

---

[3]   FTX Recovery Trust was substituted as the plaintiff in this matter. *See* Mot.1 n.3. For the reasons stated in the Motion, this Reply continues to specifically address prior-named plaintiffs FTX Trading Ltd. ("**FTX**") and Alameda Research Ltd. ("**Alameda**," and together with FTX, "**Plaintiffs**") and each of their claims. *See id.*

[4]   Capitalized terms used but not defined in this Reply shall have the meanings ascribed to them in the Motion or accompanying MOL, as applicable.

Plaintiffs further contend that the Court should exercise its discretion to not enforce the arbitration provisions in the FTX Terms of Service—again, which FTX drafted—in contravention of Third Circuit precedent. Regardless, Plaintiffs fail to present any convincing reason not to compel arbitration consistent with the FTX Terms of Service.

Similarly, Plaintiffs fail to articulate a coherent reason why the Bankruptcy Law Claims should not be stayed pending arbitration of the Common Law Claims. These two sets of claims are not merely factually intertwined; they require resolution of overlapping issues. Thus, resolution of the Common Law Claims should lead, as they will affect the resolution of the Bankruptcy Law Claims. Simply, it would be inefficient, against judicial economy, and would risk inconsistent judgments to address both sets of claims simultaneously in different forums.

Plaintiffs also still fail to show they stated any claims for relief. The Common Law Claims fail under Antiguan law, and Plaintiffs fail to establish that section 547 of the Bankruptcy Code applies extraterritorially to the Bankruptcy Law Claims. Therefore, to the extent the Court does not compel arbitration of the Common Law Claims and stay litigation of the Bankruptcy Law Claims, the Court should dismiss the Complaint for failure to state a claim.

## <u>ARGUMENT</u>

**I.      Plaintiffs Fail to Rebut That the Court Should Compel Arbitration
of the Common Law Claims and Stay Litigation of the Bankruptcy Law Claims**

A.      *This Dispute Is Governed by Enforceable Arbitration Agreements*

Plaintiffs do not dispute, nor could they, the applicability of the New York Convention or that "[t]he strong federal policy favoring arbitration applies with special force" in the context of international arbitration agreements. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir.2009) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 631 (1985)); *see* Mot. at 7-9. Plaintiffs argue that the "presumption in favor of arbitration

2

does not apply to this inquiry" of whether there is a valid agreement to arbitrate between the parties," Opp. at 8 (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). But Plaintiffs do not challenge the *validity* of FTX Terms of Service. In fact, to the contrary, they insist that "[a]ll FTX customers were required to agree to terms of service before using the FTX exchange," Opp. at 5, and rely on them in pursuing a breach of contract claim based on the ***same*** FTX Terms of Service.

Instead, Plaintiffs attempt to shift focus by disputing Meerun's argument that the arbitration provision in the 2022 FTX Terms of Service is controlling because the 2020 FTX Terms of Service explicitly states that FTX "may amend any portion of these Terms at any time" and that "changes . . . shall apply on a going-forward basis." Mot. at 7 n.10; Opp. at 8-9 (quoting 2020 FTX Terms of Service § 28). However, the Motion does not hinge on whether the 2022 FTX Terms of Service control. Instead, arbitration of the Common Law claims is mandated by *both* the 2020 FTX Terms of Service and the 2022 FTX Terms of Service. *See* Mot. at 7 n. 10 ("Still, this MOL addresses both arbitration provisions."); *see generally* Mot. at 7-13 (addressing both provisions).

Plaintiffs are wrong that any "lack of clarity" regarding which FTX Terms of Service applies is "fatal." Opp. at 9. Plaintiffs argue that where parties enter two different agreements requiring resolving disputes *via* international arbitration—even where one party brings claims under those agreements—a court should enforce neither agreement and instead require the parties to litigate their dispute in a U.S. court. That is an utterly absurd result and is unsupported by the case law.[5] Rather, Plaintiffs' cited case law provides that where there is an ambiguity regarding

---

[5] The cases cited by Plaintiffs are distinguishable and do not support enforcing neither of the arbitration clauses. *See Olympus Am., Inc. v. Cintas Corp. No. 2*, 2021 WL 1248523, at *6 (D.N.J. Apr. 5, 2021) (denying without prejudice motion to compel arbitration based on the later of two arbitration agreements not mentioned in the complaint, but permitting movant to either re-file a motion based on the earlier arbitration agreement or conduct limited discovery regarding the later agreement); *Jayson Co. v. Vertical Mkt. Software*, 2006 WL 1374039, at *5 (D.N.J. May 18, 2006) (finding arbitration

the appropriate arbitration forum and one party was the sole drafter of the agreements, "any ambiguity must be construed in [the other party's] favor." *Stanley v. A Better Way Wholesale Autos, Inc.*, 2018 WL 3872156, at *6, *8 (D. Conn. Aug. 15, 2018) (resolving ambiguity regarding forum in favor of party that did not draft the agreement though ultimately finding arbitration right waived). Here, FTX is the drafter of the FTX Terms of Service, to which users must consent in order to utilize the FTX platform. Users like Meerun have no input or ability to negotiate the FTX Terms of Service. Accordingly, the Court should order arbitration pursuant to the FTX Terms of Service that FTX drafted, and not permit Plaintiffs to avoid the self-imposed obligation to arbitrate.

Plaintiffs are also incorrect that the arbitration provisions do not encompass claims for fraud and unjust enrichment. *See* Opp. at 10-11; *cf.* Mot. at 9-10. The extremely broad language of the arbitration provisions in the FTX Terms of Service covers both claims, which relate to Meerun's alleged use of FTX's platform. *See* 2020 FTX Terms of Service § 27 (encompassing "any dispute between you and [FTX] ***related in any way to, or arising in any way from, our Services*** or these Terms") (emphasis added); 2022 FTX Terms of Service (encompassing "any dispute, claim, controversy or difference arising out of or in connection with the Terms" or "***regarding any non-contractual obligations arising out of or in connection with the Services***") (emphasis added); Mot. at 5. n.8 (discussing the broad definition of "Services" to include use of FTX's platform to transact in digital assets or use of services offered through FTX's website or mobile applications). The cases relied on by Plaintiffs are inapposite because they involve

---

clause did not apply where "none of [plaintiff's] allegations rel[ied]" on the agreement containing the clause); *In re Nu Ride Inc.*, 2024 WL 4376130, at *12 (Bankr. D. Del. Oct. 1, 2024) (denying motion to compel arbitration against non-signatories where plaintiffs "assert[ed] breaches of specific contractual provisions separately against only the parties to those contracts most of which d[id] not have arbitration provisions").

narrower arbitration provisions that only included claims that arose out of or related to the underlying agreement.[6]

Finally, the exclusion of fraud from the indemnification provision in 2022 FTX Terms of Service has nothing to do with the scope of the arbitration clause. *See* Opp. at 11 n. 4 (citing 2022 FTX Terms of Service § 30.1.2).

B.       *The Arbitration Provisions Are Enforceable by This Court*

Plaintiffs' argument that the Court should exercise its discretion to deny the Motion because arbitration would "jeopardize the objectives of the Bankruptcy Code," Opp. at 11-14, ignores Third Circuit case law regarding the limits of such discretion, *see* Mot. at 11-12. The Third Circuit has held that "where a party seeks to enforce a debtor-derivative pre-petition [non-bankruptcy law] claim, a court does not have the discretion to deny enforcement of an otherwise applicable arbitration clause." *In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006) (holding that the standard articulated in *Hays & Co. v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir.1989) applies to both core and non-core proceedings).[7] The Third Circuit's holding precludes Plaintiffs' argument that arbitration of the Common Law claims—which are derived from the Debtors and not based on the Bankruptcy Code—would be inconsistent with the purposes

---

6     *See In re Pursuit Cap. Mgmt., LLC*, 595 B.R. 631, 668 (Bankr. D. Del. 2018) (denying arbitration in part where provision applied to claims "arising out of or relating to this agreement or the breach thereof," but granting motion as to unjust enrichment claim); *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 151, 157 (Del. 2002) (denying arbitration where provision applied to claims "arising out of or in connection with this Agreement"); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 656 (Del. Ch. 2012) (same); *In re Nu Ride*, 2024 WL 4376130, at *8 (same); *360 Campaign Consulting, LLC v. Diversity Commc'n, LLC*, 2020 WL 1320909, at *9 (Del. Ch. Mar. 20, 2020) (same).

7     *See In re: Yellow Corp.*, 2024 WL 1313308, at *7 (Bankr. D. Del. Mar. 27, 2024) (stating that *Hays* and *Mintze* "explain that when a trustee or debtor-in-possession asserts a pre-bankruptcy claim against a counterparty, an arbitration clause must be enforced."); *In re Olympus Healthcare Grp., Inc.*, 352 B.R. 603, 610 (Bankr. D. Del. 2006) ("[T]he Third Circuit has held that the appropriate analysis turns upon whether the claims are derived from the debtor or the claims are those 'that the Bankruptcy Code created for the benefit of the creditors of the estate.'") (quoting *Mintze*, 434 F.3d at 230-31).

of the Bankruptcy Code. *See Mintze*, 434 F.3d at 231-32 ("[W]e cannot find an inherent conflict between arbitration of [the] federal and state consumer protection issues and the underlying purposes of the Bankruptcy Code.").

Even if the Court does have discretion regarding whether to compel arbitration (it does not), Plaintiffs do not sufficiently demonstrate why the Court should exercise its discretion here in Plaintiffs' favor and decline to order arbitration. *See* Mot. at 12-13. Plaintiffs' quibbles with the possibility of having to resolve their claims in two or three different forums, Opp. at 12-13, should be rejected, as it was solely FTX's decision to implement successive Terms of Service requiring arbitration in different forums and pursuant to different rules. Plaintiffs' accusations of inefficiency and delay, Opp. at 13, should likewise be rejected. Plaintiffs have shown no urgency in prosecuting their purported claims against Meerun, instead waiting until the two-year tolling period under the Bankruptcy Code was about to expire to bring suit, while admittedly knowing about Meerun's alleged conduct well before. *See* Compl. ¶¶ 5-8, 29, 32-41, 47, 50-52.

Additionally, while Plaintiffs insist the FTX Terms of Service "are central documents in the broader FTX Chapter 11 Cases that have already been subject to significant litigation in this Court," Opp. at 12, there is nothing to suggest that an arbitrator's interpretation of the FTX Terms of Service for purposes of resolving the Common Law claims would implicate any bankruptcy-related issues. Finally, the cases cited by FTX (most of which were decided by courts in other circuits) do not support denying arbitration in this context.[8]

---

[8]   *See In re Thorpe Insulation Co.*, 671 F.3d 1011, 1022 (9th Cir. 2012) (finding court had discretion to deny motion to compel arbitration where breach of contract claim related to actions debtor took to exercise its rights in bankruptcy and raised questions related to section 524(g) of the Bankruptcy Code); *In re White Mountain Mining Co.*, L.L.C., 403 F.3d 164, 170 (4th Cir. 2005) (denying motion to compel arbitration where case involved a "core issue" that "was critical to the debtor's ability to formulate a plan of reorganization" and; thus, arbitration "would have substantially interfered with the debtor's efforts to reorganize"); *In re U.S. Lines, Inc.*, 197 F.3d 631, 641 (2d Cir. 1999) (denying motion to compel arbitration, finding the proceedings to be "integral to the bankruptcy court's ability to preserve

C.    *The Bankruptcy Law Claims Should Be Stayed*
      *Pending Arbitration of the Common Law Claims*

A stay of the Bankruptcy Law Claims is appropriate not only because the Common Law

Claims and Bankruptcy Law Claims are factually *intertwined*, but also because both require

resolution of overlapping issues. The resolution of the Common Law Claims will affect the

resolution of the Bankruptcy Law Claims. *See* Mot. at 13-14. For example, factual findings

regarding the alleged funds transferred from Plaintiffs for the benefit of Meerun are pivotal to all

claims. *See* Mot. at 13. The intertwinement of the Common Law Claims and the Bankruptcy Law

claims distinguishes this action from the cases cited by Plaintiffs. Opp. at 14-15. *See In re Paragon

Offshore PLC*, 588 B.R. 735, 761-62 (Bankr. D. Del. 2018) (denying stay because the arbitrable

claim did not "present a critical and predominate part of the proceedings," "have some effect on

the non-arbitrable claims," or "materially affect the disposition of non-arbitrable claims," and the

non-arbitrable claims were not "contingent" on the success of the arbitrable claims); *In re Pursuit

Cap. Mgmt., LLC*, 595 B.R. at 672 (denying stay as to claims that "could be actionable" even if

arbitrable claims failed); *In re Nu Ride*, 2024 WL 4376130, at *12 (denying stay where arbitrable

---

and equitably distribute the Trust's assets" and emphasizing "the complex factual scenario, involving multiple claims, policies and insurers"); *In re: Yellow Corp.*, 2024 WL 1313308, at *2, 13-15 (Bankr. D. Del. Mar. 27, 2024) (denying motion to compel arbitration and ordering the withdrawal liability dispute to be resolved through the claims allowance process based on the "unusual circumstances of this case" including "the participation of other parties-in-interest in the claims allowance process" and "the fact that the parties agree that the dispute is perhaps the most important issue to be decided in the bankruptcy case"); *In re Gercke*, 122 B.R. 621, 632 (Bankr. D.D.C.1991) (finding the United Kingdom court, where insolvency proceedings were pending, should determine "when and where claims" should be decided, including what "weight" to give to a contractual venue selection clause); *In re APF Co.*, 264 B.R. 344, 364 (Bankr. D. Del. 2001) (denying motion to compel arbitration where claims implicated several contracts, some without arbitration clauses, and distinguishing case from those where "a trustee who has voluntarily commenced suit against a third party for the benefit of the estate on a claim inherited from the debtor [is forced] to abide by the forum selection terms of the contract he is attempting to enforce") (citations omitted); *cf. In re Winstar Commc'ns, Inc.*, 335 B.R. 556, 569 (Bankr. D. Del. 2005) (compelling arbitration and distinguishing *APF* because "[i]n this case, it is the Trustee, and not [the defendant], who seeks to bypass the procedures set forth in the Agreement").

and non-arbitrable claims were not sufficiently "inter-related"); *Lepera v. ITT Corp*., 1997 WL

535165, at *8 (E.D. Pa. Aug. 12, 1997) (acknowledging that "[w]here the arbitrable claims

overwhelm or will have some affect [sic] on the non-arbitrable claims, the power to stay the non-

arbitrable claims should be exercised" but denying stay because the arbitrable claim was "clearly

separate" from and "not significantly overlap[ping] with the" non-arbitrable claims).

Plaintiffs' argument that the Court should deny the requested stay due to Plaintiffs'

concerns regarding supposed delay and inefficiency should again be rejected. It was FTX, not

Meerun, that chose to include arbitration provisions in the FTX Terms of Service and then sued

pursuant to those FTX Terms of Service. Likewise, it was Plaintiffs that sat on their purported

claims against Meerun until November 2024. *See* Section I.B, *supra.*

Finally, considering the significant overlap of relevant facts and issues, it would be

inefficient, unduly burdensome, and a waste of judicial resources to permit "simultaneous

discovery on the facts," as FTX suggests. Opp. at 16. It is also unnecessary, as Plaintiffs are already

in possession, custody, and control of substantially all the relevant information related to this

Adversary Proceeding. Staying this proceeding pending arbitration of the Common Law Claims

would inevitably streamline or minimize the matters that would remain for discovery and litigation

before this Court after arbitration concludes. *See* Mot. at 14.

## II.    Alternatively, Plaintiffs Fail to Rebut That the Court Should Dismiss the Complaint for Failure to State a Claim[9]

As an initial matter, Plaintiffs fail to explain how the choice of law provisions in the FTX

Terms of Service can apply if the arbitration provisions in those same agreements do not apply,

---

[9]    The Court should only address this portion of Meerun's Motion if the Court denies Meerun's request to compel arbitration of the Common Law Claims pursuant to the FTX Terms of Service and stay the Bankruptcy Law Claims.

particularly since the very provision of the 2020 FTX Terms of Service that states "[t]he laws of Antigua and Barbuda shall govern these Terms" is the same provision that requires arbitration. *See* 2020 FTX Terms of Service § 27. Plaintiffs also offer no justification for applying Antiguan law to the Common Law Claims in the absence of an enforceable choice of law provision. *See* Mot. at 14 n.15; *cf.* Opp. at 17 n. 9. In any event, the elements of fraud (or deceit) and breach of contract appear materially similar under both Antiguan and Delaware law. *See* Mot. at 14-16; Opp. at 17, 20-21. Regardless, Plaintiffs' Common Law Claims fail even under Antiguan law.

    A.    *Plaintiffs Fail to Sufficiently Allege Fraud*

    1.    <u>FTX</u>

Plaintiffs do not refute that FTX did not ultimately sustain any damages that were not passed onto and assumed by Alameda. *See* Opp. at 18; Mot. at 15. Instead, Plaintiffs argue that "Alameda's assumption of Defendant's positions is considered a collateral benefit to FTX that arose independently of the circumstances giving rise to the loss and is not treated as making good on FTX's losses." Opp. at 18 (citations omitted). Plaintiffs, however, have not shown that the "collateral benefit" exception applies in this context:

> The general rule is that loss which has been avoided is not recoverable as damages, although expense reasonably incurred in avoiding it may be recoverable as costs of mitigation. To this there is an exception for collateral payments (*res inter alios acta*), which the law treats as not making good the claimant's loss. . . . Broadly speaking, collateral benefits are those whose receipt arose independently of the circumstances giving rise to the loss. . . . Classic cases include loss payments under an indemnity insurance . . . Or disability pensions under a contributory scheme . . . . In cases such as these, as between the claimant and the wrongdoer, the law treats the receipt of the benefit as tantamount to the claimant making good the loss from his own resources, because they are attributable to his premiums, his contributions or his work. **The position may be different if the benefits are not collateral because . . . the benefit is derived from steps taken by the Claimant in consequence of the breach, which mitigated his loss** . . . . Justice, reasonableness and public policy are . . . the basis on which the law has arrived at the relevant principles. They are not a licence for discarding those principles and deciding each case on what may be regarded as its broader commercial merits.

9

Declaration of Stephen Houseman KC (A.P.D.I. 37) ("**Houseman Decl.**"), Ex. P (*Swynson Ltd v. Lowick Rose LLP* [2018] AC 313) at 11) (emphasis added); *see* Ex. Q (*Allianz Global Investors GmbH v. Barclays Bank plc* [2022] EWCA Civ 353) at 30 ("[F]or a subsequent transaction to be taken into account (in reduction of the loss), it must be one arising out of the consequences of the breach and in the ordinary course of business.").

Here, Plaintiffs allege that after FTX froze Meerun's account, FTX took steps to mitigate its losses by "determin[ing] that Alameda would take over Meerun's exposures (and debts)." Compl. ¶ 39. Alameda's actions were not allegedly required by a pre-existing contract, in contrast to insurance payments made pursuant to a preexisting insurance policy or the redemption payments in *Allianz*, which the court observed "usually occur pursuant to (and on the terms of) [pre-existing] contracts between the Funds and their investors . . . and [thus] the exercise of the rights thereunder, are entirely independent of the wrongdoing." Ex. Q at 37(i). Plaintiffs have not sufficiently demonstrated that the collateral benefit exception applies.

The substantive consolidation of the Debtors' estates does not change the outcome. The FTX Recovery Trust is vested with FTX's and Alameda's individual claims against Meerun, but if FTX's claim lacks the element of damages and Alameda's claim lacks the elements of reliance and/or inducement, then substantive consolidation did not vest the FTX Recovery Trust with any colorable fraud claims against Meerun. *See* Mot. at 1 n. 3; *cf.* Opp. at 19-20. Moreover, whether FTX and Alameda commingled funds is not relevant here because Plaintiffs specifically allege that Alameda took over specific and identifiable exposures/debts from FTX. Compl. ¶¶ 6, 39-41, 47; *cf.* Opp. at 19.

        2.   <u>Alameda</u>

Plaintiffs still do not sufficiently allege reliance by Alameda (as opposed to FTX) or that Meerun intended to induce reliance by Alameda. *See* Opp. at 19-20; Mot. at 15-16.

10

As to the element of intended inducement, according to Antiguan law as articulated by Plaintiffs, "[t]he precise identity of the claimant need not be known when the false representation is made*, **provided that the claimant belongs to a class of persons within the contemplation of the defendant as likely and intended to be deceived by the misrepresentation**. . . . In practice, . . . the test is often whether it was in the defendant's interest that he [rely on the false statement]." Houseman Decl. ¶ 18(c) (citations omitted) (emphasis added, Plaintiffs' emphasis omitted). However, Plaintiffs do not allege that Meerun intended to induce Alameda's reliance or had reason to believe Alameda would rely on representations he made, and nothing in the Complaint suggests that any reliance by Alameda (as opposed to FTX) was in Meerun's interests. *See* Mot. at 15-16.[10]

Reliance, under Antiguan law as set forth by Plaintiffs, deals with "[t]he essential question . . . of causation: was the claimant induced to take action in reliance on the representation made?" Houseman Decl. ¶ 19(a) (citations and emphasis omitted); Opp. at 19. However, Plaintiffs have not alleged that Alameda, as opposed to FTX, relied on any representations made by Meerun. *See* Mot. at 15.[11] Instead, Alameda's actions were caused by FTX's decision to utilize Alameda to "attempt[] to paper over the problem." Compl. ¶¶ 6, 39.

---

[10]  The 2022 FTX Terms of Service's mere mention of a "backstop liquidity provider program" does not change the analysis, *cf.* Opp. at 22. n. 12 (citing 2022 FTX Terms of Service § 16.4), particularly since the 2020 FTX Terms of Service—which was effective during the timeframe of the alleged January through March 2021 "BTMX/MOB Exploit," alleged August through December 2021 "BAO/TOMO/SXP Exploit," and part of the alleged January through September 2022 "KNC Exploit," Opp. at 5—makes no such mention.

[11]  *Cf.* Houseman Decl. ¶ 19, Ex. L (*Zurich Insurance Co plc v. Hayward* [2017] AC 142 at 71) (finding insurer did rely on defendant-employee's representation that he was injured at work when insurer entered into settlement agreement with employee despite suspecting that employee was exaggerating his injuries, emphasizing the employee's "deceitful conduct was intended to influence the mind of the insurers, not necessarily by causing them to believe him, but by causing them to value his litigation claim more highly than it was worth if the true facts had been disclosed, because the value of a claim for insurers' purposes is that which the court is likely put on it. He achieved his dishonest purpose and

11

B.   *Plaintiffs Fail to Sufficiently Allege Breach of Contract*

1.   FTX

Again, Plaintiffs do not refute that FTX did not ultimately sustain any damages that were not passed onto and assumed by Alameda. *See* Mot. at 16; Opp. at 21. Contrary to Plaintiffs' contentions, the "collateral benefit" exception does not save FTX's breach of contract claim for the same reasons it does save their fraud claim. *See* Section II.A.1, *supra*; *cf.* Opp. at 17.

2.   Alameda

Plaintiffs wrongly insist that Alameda can enforce FTX's Terms of Service as a third-party beneficiary. *See* Opp. at 21-22; Mot. at 16-17. Under Antiguan law, as set forth by Plaintiffs, "contracts cannot be enforced either by or against third parties," subject to "limited" exceptions. Houseman Decl. ¶ 23(a-b). The exception presented by Plaintiffs is the "transferred loss" principle:

> [This principle] applies where the known object of a transaction is to benefit a third party or a class of persons to which a third party belongs, and the anticipated effect of a breach of duty will be to cause loss to that third party. It has hitherto been recognised only in cases where the third party suffers loss as the intended transferee of the property affected by the breach.
>
> …
>
> It is therefore an essential feature of the principle that the recognition of a right in the contracting party to recover the third Party's loss should be necessary to give effect to the object of the transaction and to avoid a 'legal black hole', in which in the anticipated course of events the only party entitled to recover would be different from the only party which could be treated as suffering loss . . . That is why . . . it is not available if the third party has a direct right of action for the same loss, on whatever basis.

Houseman Decl., Ex. P (*Swynson*) at 14, 16 (emphasis added). Although the FTX Terms of Service say that "affiliates" of FTX are third party beneficiaries, *see* 2020 FTX Terms of Service § 36; 2022 FTX Terms of Service § 38.9, the FTX Terms of Service do not mention Alameda by name

---

thereby induced them to act to their detriment by paying almost ten times more than they would have paid but for his dishonesty.").

anywhere in the agreements. Nor do the FTX Terms of Service or Complaint indicate that Alameda was the intended beneficiary of any transaction between FTX and Meerun. Moreover, Alameda is pursuing fraud and unjust enrichment claims for the same loss; thus, it does not have a "legal necessity" to pursue a breach of contract claim as a third-party beneficiary. Accordingly, Plaintiffs' third-party beneficiary theory fails.

C.    *The Unjust Enrichment Claim Is Duplicative*

Plaintiffs argue for the first time in the Opposition that Antiguan law applies to the unjust enrichment claim.[12] Regardless, the Federal Rules apply to the question of whether FTX is permitted to plead unjust enrichment "[i]n the alternative to" its breach of contract claim. Compl. ¶ 72; *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 315-16 (3d Cir. 2023) (finding that Fed. R. Civ. P. 8(d)(3) "permit[s] such claims to be pleaded in the alternative where . . . the existence or applicability of a contract is in dispute"). Meerun is not arguing in the Motion that the FTX Terms of Service do not apply. Indeed, Meerun is relying on the FTX Terms of Service to compel arbitration, and Plaintiffs are relying on the FTX Terms of Service as the basis for some of their claims. The unjust enrichment claim is purposeless and should be dismissed as duplicative.

Plaintiffs also have not sufficiently alleged that FTX was ultimately impoverished (*see* Section II.A.1 & B.1, *supra*; Mot. at 15-16) or that there was a "direct relationship between [Meerun's] alleged enrichment and [Alameda's alleged] impoverishment." *In re HH Liquidation, LLC*, 590 B.R. 211, 286 (Bankr. D. Del. 2018) ("A claim of unjust enrichment also requires a direct relationship between the alleged enrichment and impoverishment.") (citations omitted); *see Stein v. Wind Energy Holdings, Inc.*, 2022 WL 17590862, at *9 (Del. Super. Ct. Dec. 13, 2022)

---

[12]    The Complaint specifies that the fraud (Count One) and breach of contract (Count Two) claims are brought under Antiguan law, but the Complaint does not specify what jurisdiction's law applies to the unjust enrichment claim (Count Three).

("It is not enough that the defendant received a benefit from the activities of the plaintiff. Instead, there must be a showing that the defendant was unjustly enriched *by* the plaintiff who acted *for* the defendant's benefit.") (citations omitted and emphasis in original). Alameda, the party allegedly ultimately impoverished, never gave or did anything for Meerun's benefit.

      D.     *The Bankruptcy Law Claims Should Be Dismissed Because*
              *Section 547 of the Bankruptcy Code Does Not Apply Extraterritorially*

Plaintiffs do not contest that the transfers at issue are extraterritorial rather than domestic. *See* Mot. at 19-20. Nor do they contest that a finding that section 547 of the Bankruptcy Code does not apply extraterritorially would cause their claims under sections 550 and 502 of the Bankruptcy Code to likewise fail. *See id.* at 20-21. Instead, FTX primarily relies on one case, *In re FAH Liquidating Corp.*, 572 B.R. 117 (Bankr. D. Del. 2017), to argue that section 547 applies extraterritorially. *See* Opp. at 23-25.[13] The conclusion in *FAH* that section 548 applies extraterritorially in light of the language of section 541 of the Bankruptcy Code is incorrect, against the weight of authority, and is not binding on this Court. *See* Mot. at 19 & n.18; *In re Zetta Jet USA, Inc.*, 2024 WL 3198826, at *27-28 (C.D. Cal. Mar. 26, 2024) (collecting cases).[14] Moreover,

---

[13]   *In re Maxus Energy Corp.*, 641 B.R. 467 (Bankr. D. Del. 2022), another case cited by Plaintiffs, is inapposite. There, the court held that a trustee could "seek recovery under § 548 extraterritorially to claw back" transfers made by "a domestic initial transferor." *Id.* at 562 (emphasis added). Here, the alleged initial transferors (Plaintiffs) are foreign, not domestic. *See* Compl. ¶¶ 14-15.

[14]   *See also In re Zetta Jet USA, Inc.*, 624 B.R. 461, 479 (Bankr. C.D. Cal. 2020) ("[T]o the extent that the Trustee advocates that the Court consider § 541(a)(1) to define the property that he can avoid under § 548, the Court declines to do so."); *In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 612 (Bankr. S.D.N.Y. 2017) (emphasizing that "[p]roperty transferred to a third party prior to bankruptcy in payment of an antecedent debt is neither property of the estate nor property of the debtor at the time the bankruptcy case is commenced, the only two categories of property mentioned in Bankruptcy Code § 541(a)(1)" and that "some [other] provisions of the Bankruptcy Code and corresponding jurisdictional sections do contain clear statements that they apply extraterritorially"); *In re Sherwood Invs. Overseas Ltd., Inc.*, 2016 WL 5719450, at *11 (M.D. Fla. Sept. 30, 2016) ("[Plaintiff] ignores the remainder of § 541's text—notably, a subsection which limits property of the estate to property *recovered* as a fraudulent transfer."); *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807, 819 (S.D.N.Y. 1995), *aff'd sub nom. In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036 (2d Cir. 1996) ("[N]othing in the language or legislative history of § 547 expresses Congress' intent to apply the statute to foreign transfers.").

14

FTX does not offer any support for the proposition that filing a proof of claim permits an extraterritorial application of section 547. *See* Opp. at 25. "[E]ven if filing a proof of claim subjected [defendant] to the jurisdiction of the Bankruptcy Court, that does not affect the analysis as to extraterritoriality." *In re Zetta Jet USA*, 2024 WL 3198826, at *34 (rejecting argument that filing a proof of claim permits an extraterritorial application of section 548 of the Bankruptcy Code, emphasizing "extraterritoriality is a question as to the merits, not a jurisdictional one"). Accordingly, Plaintiffs' Bankruptcy Law Claims must be dismissed.[15]

## **CONCLUSION**

For the reasons stated herein and in the Motion, Meerun respectfully requests that the Court compel arbitration of Counts One through Three and stay litigation of the remaining claims, or, in the alternative, dismiss the Complaint with prejudice for failure to state a claim.

---

[15] While Plaintiffs requests that the Court enter an order disallowing Claim No. 81455 because Meerun "ignores Count Eight entirely," *see* Opp. at 26, the Motion clearly asks the Court to stay litigation of the remaining, bankruptcy-related claims pending arbitration of the Common Law Claims. *See* Mot. at 1-2, 13-14, 21.

Dated: May 9, 2025          **MORRIS JAMES LLP**
  Wilmington, Delaware

      */s/ Tara C. Pakrouh*
      Tara C. Pakrouh (DE Bar No. 6192)
      Cortlan S. Hitch (DE Bar No. 6720)
      Siena B. Cerra (DE Bar No. 7290)
      500 Delaware Avenue, Suite 1500
      Wilmington, DE 19801
      Telephone: (302) 888-6800
      Facsimile: (302) 571-1750
      E-mail: tpakrouh@morrisjames.com
        chitch@morrisjames.com
        scerra@morrisjames.com

      and

      **MORRISON COHEN LLP**
      Jason P. Gottlieb (admitted *pro hac vice*)
      Heath D. Rosenblat (admitted *pro hac vice*)
      Michael Mix (admitted *pro hac vice*)
      Rachel Fleder (admitted *pro hac vice*)
      909 Third Avenue, 27th Floor
      New York, NY 10022-4784
      Telephone: (212) 735-8600
      Facsimile: (917) 522-3116
      E-mail:  jgottlieb@morrisoncohen.com
        hrosenblat@morrisoncohen.com
        mmix@morrisoncohen.com
        rfleder@morrisoncohen.com

      *Counsel to Defendant Mohammad Nawaaz Meerun*