**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>FTX TRADING LTD., *et al.*,<br>Debtors. | Chapter 11<br>Case No. 22-11068 (KBO)<br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br>Plaintiff,<br>- against -<br>NAWAAZ MOHAMMAD MEERUN,<br>Defendant. | Adv. Pro. No. 24-50198 (KBO) |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS AND RESPOND TO PLAINTIFF'S INTERROGATORIES**

Pursuant to Rules 33, 34 and 37 of the Federal Rules of Civil Procedure, made applicable pursuant to Rules 7033, 7034, and 7037 of the Federal Rules of Bankruptcy Procedure, plaintiff FTX Recovery Trust ("Plaintiff") respectfully submits this motion to compel defendant Mohammad Nawaaz Meerun ("Defendant") to answer fully and under oath *Plaintiff's First Set of Interrogatories to Defendant (Arbitrability Discovery)* (the "Interrogatories," Ex. 1[1]) and to produce non-privileged documents, electronically stored information, or tangible things responsive to *Plaintiff's First Set of Requests for Production of Documents to Defendant (Arbitrability Discovery)* (Ex. 2) (together, the "Discovery Requests"). In support of this motion, Plaintiff respectfully states as follows:

1 Citations herein to "Ex. __" are to exhibits attached to the *Declaration of Christopher J. Dunne in Support of Plaintiff's Motion to Compel Defendant to Produce Documents and Respond to Plaintiff's Interrogatories* ("Decl."), filed concurrently herewith.

## INTRODUCTION AND RELEVANT BACKGROUND

***Defendant's Fraudulent Exploits.*** This adversary proceeding arises from a series of frauds perpetrated by Defendant against FTX Trading Ltd. ("FTX") and Alameda Research Ltd. ("Alameda"), causing them losses of approximately one billion dollars. (Compl. ¶ 1.) Each exploit adhered to the same three-step pattern, which Defendant primarily carried out using his many aliases. (Compl. ¶ 1.) *First*, Defendant accumulated enormous positions in illiquid tokens to artificially drive up their prices. *Second*, Defendant used those artificially inflated tokens as collateral to "borrow" money from FTX's margin trading program. *Third*, Defendant withdrew the "borrowed" funds before his artificially-inflated collateral collapsed in value, leaving FTX and Alameda to suffer the substantial losses that resulted. (Compl. ¶¶ 4-8.) On November 8, 2024, Plaintiff commenced this adversary proceeding, asserting claims for fraud, breach of contract, unjust enrichment, avoidance and recovery of transfers, and disallowance of claims arising out of Defendant's market manipulation schemes.

***Defendant's Motion to Compel Arbitration.*** On February 14, 2025, Defendant, citing two different arbitration provisions in two different versions of the FTX Terms of Service,[2] moved to compel arbitration of Plaintiff's breach of contract, fraud, and unjust enrichment claims and stay litigation of Plaintiff's remaining claims, or, in the alternative, dismiss the Complaint for failure to state a claim upon which relief can be granted [Adv. D.I. 11, 12] ("Mot."). As a threshold matter, the Court cannot compel arbitration unless it finds that Defendant has met his burden of establishing that a valid arbitration agreement governs Plaintiff's claims. Defendant's motion to compel arbitration cites two different arbitration

---

2 Capitalized terms used in this memorandum shall have the same meaning as those used in *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings or to Dismiss The Complaint for Failure to State a Claim* [Adv. D.I. 36] ("Opp.").

provisions in two different agreements: the 2020 Terms of Service and the 2022 Terms of Service. But those two different Terms of Service are governed by the laws of different jurisdictions. And their arbitration provisions call for arbitration in different locations and under different arbitral rules and using different substantive laws.[3] Defendant's motion asks this Court to apply only the 2022 Terms of Service (Mot. at 7 n.10),[4] which are inapplicable to Plaintiff's claims relating to any of Defendant's conduct prior to May 13, 2022, and which only became applicable after "the first time" Defendant transacted on the FTX exchange "after the initial posting" of those terms. (2020 Terms of Service § 28; 2022 Terms of Service § 22.) As such, any transactions that Defendant initiated prior to May 13, 2022 would be governed by the 2020 Terms of Service, and any transactions initiated by Defendant thereafter would be governed by the 2022 Terms of Service.

Instead of clarifying which terms he believes applies (and to which conduct), Defendant's reply brief [Adv. D.I. 45] ("Reply") argues, for the first time, that "arbitration of the Common Law claims is mandated by *both* the 2020 FTX Terms of Service and the 2022 FTX Terms of Service" and that "any 'lack of clarity' regarding which FTX Terms of Service applies" is not "fatal" to Defendant's motion. (Reply at 3.) Put another way, although Defendant asks this Court to compel arbitration, he offers no clarity about where the parties should arbitrate, which arbitral body's rules apply, and what substantive laws govern the agreement or the arbitration process.

---

3 The 2020 Terms of Service refer to arbitration in, and governed by the laws of, Antigua and Barbuda. (2020 Terms of Service § 27.) The 2022 Terms of Service refer to arbitration in Singapore, governed by the laws of England. (2022 Terms of Service §§ 38.11-38.12.)

4 *See also Motion to Stay Discovery Pending a Ruling on Defendant Mohammad Nawaaz Meerun's Motion to Compel* [Adv. D.I. 15] (discussing only rules of Singapore International Arbitration Centre).

***Defendant's Motion to Stay Discovery.*** On February 18, 2025, Defendant filed a motion to stay discovery pending resolution of his motion to compel arbitration [Adv. D.I. 15], which Plaintiff opposed on March 4, 2025 [Adv. D.I. 26]. On June 2, 2025, the Court granted in part Defendant's motion to stay discovery, but expressly permitted discovery "on any arbitrability issues as necessary and appropriate" [Adv. D.I. 50].

***Plaintiff's Discovery Requests Relating to Arbitrability.*** On July 1, 2025, Plaintiff served Discovery Requests on Defendant relating to arbitrability, as authorized by the Court's June 2, 2025 order. The Discovery Requests consist of four Interrogatories seeking information about Defendant's transaction activity on the FTX exchange (Ex. 1) and a request for documents that Defendant relied upon in responding to the Interrogatories (Ex. 2). They are targeted requests that seek to understand when—and whether—Defendant subjected himself to the FTX Terms of Service, without which the Court cannot evaluate which Terms of Service apply—if either of them does. This information is therefore essential to the Court's determination whether to compel arbitration of some or all of Plaintiff's claims in Singapore, Antigua and Barbuda, or not at all.

On July 31, 2025, Defendant served *Defendant Mohammad Nawaaz Meerun's Responses and Objections to Plaintiff's First Set of Interrogatories (Arbitrability Discovery)* (Ex. 3) and *Defendant Mohammad Nawaaz Meerun's Responses and Objections to Plaintiff's First Set of Requests for Production of Documents (Arbitrability Discovery)* (Ex. 4). Defendant objects to every Discovery Request and refuses to produce any responsive materials or respond substantively to any Interrogatory. Among other bases, Defendant objects to each Discovery Request on the basis that "Plaintiff has neither asked for nor received permission from the Court to take discovery on any arbitrability issues." (Ex. 3 ¶ 1; Ex. 4 ¶ 1.) Defendant further objects

on the basis that the information sought by each Discovery Request is not "necessary or appropriate" to arbitrability. (Ex. 3 ¶ 2; Ex. 4 ¶ 2.)

***The Conferrals.*** Counsel for the parties conferred on July 25, 2025, July 30, 2025, and August 4, 2025 to discuss the Discovery Requests and the R&Os. (Decl. ¶ 6.) At the meet and confers and in subsequent email correspondence, counsel for Defendant confirmed that Defendant will not respond substantively to any of Plaintiff's Interrogatories or produce any documents in response to Plaintiff's document request. (Decl. ¶ 6.)

On August 8, 2025, Plaintiff submitted a letter to the Court outlining the parties' positions, requesting clarity about whether the Court's June 2, 2025 order requires leave of Court to serve arbitrability discovery, and expressing Plaintiff's intent to file the instant motion. (Adv. D.I. 56.) In an August 15, 2025 email to the parties, the Court clarified that "the Court's order at DI 50 does not require the parties to seek leave of Court to serve discovery on arbitrability." (Decl. ¶ 8; Ex. 6 at 2.) On August 18, 2025, counsel for Defendant confirmed that this communication from the Court did not change his position with respect to the Discovery Requests that Plaintiff had propounded. (Decl. ¶ 8; Ex. 6 at 1)

## LEGAL STANDARD

"[A]ny time the court must make a finding to determine arbitrability, pre-arbitration discovery may be warranted." *Guidotti* v. *Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774 n.5. (3d Cir. 2013). Whether "discovery is appropriate on the arbitrability issue" is subject to "the sound discretion of the able District Judge." *Klepper* v. *SLI, Inc.*, 45 F. App'x 136, 139 (3d Cir. 2002); *see Guidotti*, 716 F.3d at 773 (recognizing "[t]he significant role courts play in interpreting the validity and scope of contract provisions" as an important "brake on the FAA's speed impulse"). "Motions to compel discovery are governed by Federal Rule of Civil Procedure 37, made applicable pursuant to Federal Rules of Bankruptcy Procedure 7001 and

7037." *In re Anderson News, LLC*, 615 B.R. 45, 50 (Bankr. D. Del. 2020). They should be granted where, as here, a party refuses to respond to a discovery request that falls within a Court's discovery order. *See* Fed. R. Civ. P. 37(b) (where a party "fails to obey an order to provide or permit discovery," the court "may issue further just orders").

## ARGUMENT

### A. The Discovery Requests Are Necessary and Appropriate.

Plaintiff's Discovery Requests fall squarely within the scope of the Court's June 2, 2025 order permitting discovery on "any arbitrability issues as necessary and appropriate" [Adv. D.I. 50].

Before compelling arbitration, the Court must be satisfied that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis* v. *Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Accordingly, discovery relating to the applicability of the arbitration agreements to Defendant's conduct, and which version applies, is necessary before the Court can rule on Defendant's motion to compel arbitration. *See Guidotti*, 716 F.3d at 776 (where the arbitrability question is at issue, "the parties should be entitled to discovery on the question of arbitrability" (citation omitted)). Plaintiff's Discovery Requests seek precisely this information, and are narrowly tailored to assist the Court in determining which arbitration provision, if any, governs the conduct alleged in the Complaint.

***Interrogatory No. 1.*** Interrogatory No. 1 asks whether Defendant opened, logged into, transacted in, profited from, or otherwise exercised control over certain specified customer accounts that, according to Plaintiff's investigation, were likely used by Defendant or at his direction. (Ex. 1 at 7-8.) This information is pertinent to determining whether Defendant's activities with respect to these accounts is governed by the Terms of Service (and which

version). *See Simensky* v. *Experian Info. Sols., Inc.*, 2025 WL 47552, at *5 (W.D. Pa. Jan. 8, 2025) (requiring evidence that plaintiff agreed to the website's terms of use through the sign-on/account creation process before ruling on defendant's motion to compel arbitration based on the arbitration clause contained therein). Although Plaintiff has records of the account activity for these customer accounts, most of the accounts that Plaintiff's investigation has linked to Defendant are not registered in Defendant's name. (*See* Compl. ¶¶ 1, 17, 43.) As such, only Defendant knows whether he was behind the activities of a given account.

***Interrogatory No. 2.*** Interrogatory No. 2 asks Defendant to identify other persons who, to Defendant's knowledge, opened, logged into, transacted in, profited from, or otherwise exercised control over the accounts listed in Interrogatory No. 1. (Ex. 1 at 8.) To the extent that Defendant did not himself initiate the transactions underlying the claims in the Complaint directly, but instead directed others to carry out the transactions, he may lack a sufficient basis to compel arbitration under either version of the Terms of Service. *See White* v. *Sunoco Inc.*, 189 F. Supp. 3d 486, 492 (E.D. Pa. 2016) ("Arbitration clauses generally 'can be enforced only by the signatories to those agreements.'" (citation omitted)). Significantly, the Complaint alleges that some of the accounts connected to Defendant belonged to victims of data breaches or other innocent victims. (Compl. ¶ 17.) Interrogatory No. 2 thus also bears on whether there was mutual assent in entering into the Terms of Service with FTX, which was unaware that Defendant was responsible for these transactions, and whether enforcing the Terms of Service would be unconscionable.

***Interrogatory No. 3.*** Interrogatory No. 3 instructs Defendant to indicate, for each of the accounts listed in Interrogatory No. 1, "whether You agreed to the FTX Terms of Service, either expressly or through Transacting on the Exchange." (Ex. 1 at 8.) This Interrogatory goes

squarely to the question of arbitrability—i.e., was there an agreement to arbitrate—and Defendant has no basis for contending that it is "not relevant or important to the issue of arbitrability." (Ex. 3 at 8.) Defendant cannot invoke an arbitration provision while refusing to acknowledge that he assented to it. *See Franlogic Scout Dev., LLC* v. *Scott Holdings, Inc.*, 2017 WL 2982396, at *4 (E.D. Pa. July 12, 2017) (movant has the burden of demonstrating that a valid agreement to arbitrate governs the dispute).

***Interrogatory No. 4.*** Interrogatory No. 4 instructs Defendant to identify all instances in which he transacted on the FTX exchange on or after May 13, 2022 (Ex. 1 at 8), which is the initial posting date of the 2022 Terms of Service. As noted above, the 2022 Terms of Service only became applicable, if at all, after "the first time" Defendant transacted on the FTX exchange "after the initial posting" of those terms, and only "with respect to transactions initiated after" that date. (2020 Terms of Service § 28; 2022 Terms of Service § 22.) Thus, Interrogatory No. 4 seeks to identify when the 2022 Terms of Service became effective with respect to Defendant. If Defendant never transacted on the exchange on or after May 13, 2022, then the 2022 Terms of Service would not apply.

***Document Request No. 1.*** Plaintiff served only one document request on Defendant, which seeks documents that Defendant relied upon in responding to the Interrogatories. (Ex. 2 at 11.) This type of document request is generally considered a reasonable and acceptable format for requesting documents. *See, e.g.*, *CT Install Am., LLC* v. *Boryszewski*, 2025 WL 257127, at *7 (E.D. Pa. Jan. 21, 2025) ("Defendants are entitled to documents relied upon by Plaintiff in answering their First Set of Interrogatories.").

**B. Defendant's Objections Are Without Merit.**

Defendant's objections are without merit, and his blanket refusal to provide any responsive information whatsoever necessitated the filing of this motion.

*First*, Defendant objects to every Discovery Request on the basis that they are "*void ab initio*" because of the Court's stay of merits discovery, and because "Plaintiff has neither asked for nor received permission from the Court to take discovery on any arbitrability issues." (Ex. 3 ¶ 1, 6-8; Ex. 4 ¶ 1, 5.) But the Court's August 15, 2025 email made clear that the Court's order does not require the parties to seek leave of Court to serve discovery on arbitrability. (Decl. ¶ 8; Ex. 6 at 2.)

*Second*, Defendant objects to every Discovery Request on the basis that they are "overbroad" and "not relevant or important to the issue of arbitrability." (Ex. 3 at 7-8; Ex. 4 at 5.) As an initial matter, Defendant's relevance and overbreadth objections fail for want of specificity. *See Inventio AG.* v. *ThyssenKrupp Elevator Ams. Corp.*, 2009 WL 2408422, at *2 (D. Del. Aug. 3, 2009) ("The party objecting to a particular interrogatory 'must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" (citation omitted)). Moreover, as discussed *supra*, they are simply wrong. The Discovery Requests seek information that is pertinent to the Court's determination of which arbitration provision is applicable to Plaintiff's claims, if any. Certainly this information meets the "low" bar for relevant evidence. *Forrest* v. *Parry*, 930 F.3d 93, 114 (3d Cir. 2019). Nor are the Discovery Requests overbroad, as each request is tailored to seek information about Defendant's activities on the exchange using certain specified accounts, or within specific time periods. *See In re Anderson News, LLC*, 615 B.R. 45, 53 (Bankr. D. Del. 2020) (where a "discovery request meets the Rule 26 requirements . . . in the context of the issue presently before the Court, the request is neither overly broad nor unduly burdensome"). Defendant's overbreadth objections are particularly baseless given that he has offered no proposed way to narrow the requests, and has instead refused to search for or provide any information whatsoever.

*Third*, Defendant objects to each Discovery Request on the basis that the information sought is "already in the possession of" or is "more accessible to" Plaintiff. (Ex. 3 at 7-8; Ex. 4 ¶ 9.) This objection is similarly without merit. Defendant utilized aliases and fraudulent accounts to effectuate his market manipulation scheme; Plaintiff is not in possession of this information. (*See* Compl. ¶¶ 1, 17, 43.) Only Defendant knows whether and when he initiated transactions on the exchange using these accounts, and in turn, which arbitration provision (if any) applies to each of these transactions. And in any event, "[a] party must produce relevant information and documents in its possession, regardless if he or she believes the information is already possessed by or available to the requesting party." *Butz* v. *Lawns Unlimited Ltd.*, 2007 WL 9811132, at *2 (D. Del. July 25, 2007).

Given the necessity of the requested information to the Court's arbitrability determination and the insufficiency of Defendant's objections, the Court should order Defendant to meaningfully respond to the Discovery Requests. *See Hoffman* v. *United States*, 341 U.S. 479, 486 (1951) ("It is for the court to say whether his silence is justified and to require him to answer if 'it clearly appears to the court that he is mistaken.'" (citations omitted)).

## CERTIFICATION PURSUANT TO LOCAL RULE 7026-1

Plaintiff's counsel hereby certifies that they have in good faith conferred or attempted to confer with counsel for Defendant in a reasonable effort to resolve the matters set forth herein without Court action. Before this motion was filed, the parties tried to resolve and/or limit matters through teleconferences and various correspondence, as reflected above and in the accompanying declaration, but no agreement was reached.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order Defendant to respond to the Interrogatories and produce the requested documents.

Dated: August 22, 2025
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson, IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
cobb@lrclaw.com
mcguire@lrclaw.com
robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Stephen Ehrenberg (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: ehrenbergs@sullcrom.com
gluecksteinb@sullcrom.com
dunnec@sullcrom.com
crokej@sullcrom.com

*Counsel for Plaintiff*